**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **AMENDED PETITION FOR HABEAS** |
| | ) | **CORPUS RELIEF UNDER** |
| vs. | ) | **28 U.S.C. § 2255** |
| | ) | |
| Shondo Billie, | ) | |
| | ) | Case No. 4:05-cr-012 |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| Shondo Billie, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07-cv-072 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is the Defendant's amended Petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence filed on February 14, 2008. See Docket No. 76. On February 21, 2008, after an initial review of the motion, the Court ordered the Government to file a response within sixty days. See Docket No. 78. On April 11, 2008, the Government filed a response requesting that the Court deny the motion. See Docket No. 79. On May 5, 2008, Billie filed a reply brief. See Docket No. 81. For the reasons set forth below, the Defendant's petition is denied.

I.      **BACKGROUND**

On February 17, 2005, the defendant, Shondo Billie, was charged in an indictment with various sexual offenses involving a minor, C.H.  See Docket No. 1.  Count One charged Billie with sexual abuse of a minor in or about November 2003.  Count Two charged Billie with sexual abuse of a minor from September 2001 through December 2001.  Count Three charged Billie with aggravated sexual abuse of a child from January 2001 through August 2001.  Count Four charged Billie with aggravated sexual abuse of a child from January 2001 through August 2001.  Count Five charged Billie with aggravated sexual abuse of a child from August 2000 through December 2000.  Count Six charged Billie with aggravated sexual abuse of a child from August 2000 through December 2000.

On March 2, 2005, Billie made an initial appearance and attorney Todd L. Cresap was appointed as defense counsel.  See Docket No. 4.  The Court issued a pretrial order which required all pretrial motions to be filed on or before March 28, 2005.  See Docket No. 10.  On April 13, 2005, the Court granted attorney Cresap's request to withdraw as counsel based upon Billie's dissatisfaction with Cresap's representation.  See Docket No. 24.  On April 13, 2005, the Court appointed attorney James G. Wolff as defense counsel to represent Billie.  See Docket No. 25.  On August 24, 2005, Billie filed a motion in limine to suppress evidence of certain sexual acts between Billie and C.H.  See Docket No. 40.  The Court denied the motion on August 26, 2005.  See Docket No. 42.

A jury trial commenced on August 30, 2005.  On the first day of trial, Billie requested a hearing to determine the voluntariness of statements that he made to FBI agents on December 15, 2004.  See Tr. 15-16.  The Court held a hearing outside the presence of the jury and found that the

statements were voluntary.  After hearing all of the evidence, the jury found Billie not guilty on Count One and guilty on Counts Two through Six.  The Court sentenced Billie to 180 months in prison on Count Two and 230 months in prison on each count of Counts Three through Six, with all counts to run concurrent.  See Docket No. 56.

Billie appealed his conviction to the Eighth Circuit Court of Appeals.  See United States v. Billie, 226 Fed. Appx. 631, 2007 WL 1052545 (8th Cir. 2007).  On appeal, attorney Wolff filed a brief pursuant to Anders v. State of California, 386 U.S. 738 (1967), in which he stated that the case lacked any meritorious issues for appeal and requested permission to withdraw as counsel.  Counsel argued that the only issue which may arguably support the appeal was whether the Court erred when it denied Billie's motion in limine.  The Eighth Circuit found that Billie's case lacked any meritorious issues for appeal, and thus affirmed the judgment of this Court.

## II.    STANDARD OF REVIEW

Billie has filed a 28 U.S.C. § 2255 petition contending that his Sixth Amendment right to effective assistance of counsel was violated by attorney James Wolff's representation at the pretrial, trial, and post-trial stages of the proceedings.  "A motion made pursuant to 28 U.S.C. § 2255 requires a showing of either constitutional or jurisdictional error, or a 'fundamental defect' resulting in a 'complete miscarriage of justice.'"  United States v. Gianakos, 2007 WL 3124686, at *4 (D.N.D. Oct. 23, 2007) (quoting Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962)).  Ineffective assistance of counsel claims are properly raised in a 28 U.S.C. § 2255 action.  See United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006).  To be eligible for habeas corpus relief on an ineffective assistance of counsel claim, the defendant bears

3

the burden of satisfying the two-part test announced in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

The defendant must first show that counsel's performance was deficient. <u>Strickland</u>, 466 U.S. at 687. Counsel's performance is deficient when it falls below an objective standard of reasonableness. <u>Id.</u> at 687-88; <u>see</u> <u>Marcrum v. Luebbers</u>, 509 F.3d 489, 502 (8th Cir. 2007). To determine whether counsel satisfied the reasonableness standard, a court must "assess reasonableness on all the facts of the particular case," "view the facts as they existed at the time of counsel's conduct" and not in hindsight, and "evaluate counsel's performance with a view to whether counsel functioned to assure adversarial testing" of the prosecution's case. <u>See</u> <u>Marcrum</u>, 509 F.3d at 502. Because of the inherent difficulties in evaluating counsel's conduct at the time of performance, there is a strong presumption that counsel's performance is reasonable and "might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689.

The defendant must then show that counsel's deficient performance prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687. Prejudice is rarely presumed in ineffective assistance of counsel cases. <u>Malcom v. Houston</u>, 518 F.3d 624, 627 (8th Cir. 2008). Prejudice is presumed "when there has been a complete denial of counsel or a denial of counsel at a critical stage, when 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing,' or when even competent counsel could not be expected to be of assistance given the circumstances." <u>Id.</u> Billie has not alleged any conduct by trial counsel which would give rise to a presumption of prejudice. Therefore, to succeed on his ineffective assistance of counsel claims, Billie must show that counsel's performance prejudiced his defense. "A showing of prejudice requires a determination by the court that 'there is a reasonable probability [sufficient to undermine confidence in the outcome] that, but for

4

counsel's unprofessional errors, the result of the proceeding would have been different.'"  United States v. White, 341 F.3d 673, 677 (8th Cir. 2003) (quoting Strickland, 466 U.S. at 694)).

The standard set forth in Strickland requires that judicial scrutiny of counsel's performance be highly deferential.  "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  Strickland, 466 U.S. at 689.


## III.   LEGAL DISCUSSION

The threshold issue before the Court is whether attorney Wolff's performance at any stage of the criminal proceedings was deficient and whether such deficiency prejudiced Billie's defense.  Cumulative error by counsel will not justify habeas relief because each ineffective assistance of counsel claim must stand or fall on its own.  See Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990).


### A.   PRETRIAL

The Court appointed attorney Wolff as defense counsel on April 13, 2005.  Prior to trial, defense counsel filed a motion in limine seeking the exclusion of evidence of certain sexual acts between Billie and C.H.  The Court denied the motion on August 26, 2005.  See Docket No. 42.  On August 30, 2005, the first day of trial, counsel informed the Court that he had obtained information from Billie "in the last couple of weeks" which challenged the voluntariness of statements that Billie had made to FBI Agents Robert Trone and Shane Ball on December 15, 2004.  Defense counsel requested an evidentiary hearing on the matter.  See Tr. 15-16.  In the statements, Billie confessed

to engaging in oral and anal intercourse with C.H. on numerous occasions, with the last incident occurring in December 2001.  See Tr. 176-178, 255-256.

The Court held a hearing outside the presence of the jury on the first day of the trial.  Billie testified at the hearing that he was intoxicated the night before the interview, had blacked out, and did not remember much of the later part of that night or the next morning.  See Tr. 54-60.  Billie also stated that he vaguely remembered meeting with FBI Agents Trone and Ball but did not recall the details of the interview or making any admissions.  See Tr. 52-53.  FBI Agents Trone and Ball both testified that during the interview they did not notice any signs that Billie had consumed alcohol or that he was intoxicated.  See Tr. 40, 48-49.  Agent Trone testified that Billie "spoke clearly, articulately, no slurred words.  He did not smell of alcohol.  He appeared awake, coherent, alert." See Tr. 39.  After carefully considering all of the evidence, the Court found that the statements were voluntary.

Billie argues that defense counsel was defective in failing to challenge the voluntariness of the admissions with due diligence.  Billie contends that counsel failed to file a timely pretrial motion to suppress his statements and failed to present witnesses to corroborate Billie's claims of intoxication.  Billie also contends that a conviction would have been difficult to obtain without the admissions.

1.    **MOTION TO SUPPRESS**

There is no clear-cut guideline as to when defense counsel is deficient for failing to file a timely motion to suppress evidence. However, the defendant bears the responsibility of informing counsel of the facts which support a motion. See Beeman v. State of Iowa, 108 F.3d 181, 183-85 (8th Cir. 1997). In Beeman, the Eighth Circuit Court of Appeals considered whether defense counsel was ineffective for filing an untimely motion to suppress. The trial court determined that defense counsel was not ineffective because the defendant caused the untimeliness of the motion by failing to inform counsel of the facts which supported the motion. Id. at 183-84. The Eighth Circuit agreed, finding that counsel filed the motion to suppress when he learned of the circumstances surrounding the confession. Id. at 184-85.

It is undisputed that by the time attorney Wolff was appointed as defense counsel, the deadline for filing pretrial motions had passed. On the first day of trial, defense counsel informed the Court that "in the last couple of weeks" he became aware of a possible intoxication claim. See Tr. 15. Billie does not dispute when defense counsel became aware of the intoxication claim but instead argues that counsel should have moved to suppress the statements before trial.

The Court expressly finds that Billie was not prejudiced by the late motion because the Court ruled on the motion after holding a suppression hearing outside the presence of the jury, and after having had an opportunity to carefully evaluate and consider the evidence and the totality of the circumstances surrounding the confessions. Accordingly, Billie is not entitled to habeas relief on this claim.

7

## 2.   <u>INVESTIGATION OF STATEMENTS MADE TO FBI</u>

Billie argues that defense counsel was ineffective for failing to properly investigate whether the statements made to FBI Agents Trone and Ball were voluntary.  Billie argues that counsel made no effort to contact witnesses who would have corroborated that Billie was intoxicated the night before the FBI interview.  Billie contends, "[h]ad defense counsel discussed the matter with [me], conducted a proper investigation of the incident, located witnesses and presented evidence that corroborated [my] version, the district court <u>might well have</u> reached a different conclusion as to the admissibility of the statements."  <u>See</u> Docket No. 77 (emphasis added).

At the suppression hearing, the Court acknowledged that even if there was evidence indicating that Billie had consumed alcohol the night before the interview, that evidence alone would not have warranted the suppression of the statements:

> The interview was two hours and five minutes long over the course of which there was adequate opportunity for these agents to evaluate and assess Mr. Billie's physical and mental condition. The testimony of FBI Agent Trone demonstrated that Mr. Billie indicated his health is good, he had eight hours of sleep the night before, he didn't eat breakfast but that was normal, his practice not to eat breakfast.  He acknowledges that he was not under the influence of drugs or alcohol.  He admitted that he had two beers the night before.  He had no medical problems.  He wasn't taking any prescription medications and never complained of any physical ailments. He did not evidence any physical signs or symptoms of being intoxicated or impaired.  He was coherent.  He didn't smell of alcohol.  He didn't slur his speech. He was responsive to the questions.
> All of those factors indicate that there was no evidence of physical impairment attributable to alcohol or any illegal substances that would have rendered any statements given on December 15, 2004 as being involuntary.  I have considered Mr. Billie's testimony.  He certainly may have been out drinking the evening before this interview, but he has no recollection of any of the events and details of December 15, 2004 so he really was not in a position to refute testimony of the FBI agents in this case.  And even if there was some evidence of drinking the evening before and some evidence of alcohol on his breath and slurred speech, that also doesn't necessarily equate with a statement being given that was involuntary.  And the evidence I've heard today is overwhelming as to the voluntariness of the statements.

So that is my finding in this case and I believe the government has met its burden of proof by more than a preponderance of the evidence.

Tr. 71-72.

"Counsel is required to make a reasonable investigation in preparing his defense, including reasonably deciding when to cut off further investigation." <u>Winfield v. Roper</u>, 460 F.3d 1026, 1034 (8th Cir. 2006). "The reasonableness of counsel's action may be determined or substantially influenced by the defendant's own statements or actions." <u>LaRette v. Delo</u>, 44 F.3d 681, 685 (8th Cir. 1995).

In the present case, Billie has failed to establish that he provided defense counsel with the names of potential witnesses and that counsel neglected to follow up on such leads. More importantly, Billie's testimony reveals that he was unaware of the individuals he was drinking with on December 14, 2004, the night before the FBI interview. <u>See</u> Tr. 56-59. Billie's testimony reveals that between 6:00 p.m. and 7:00 p.m. on December 14, 2004, he started drinking at the American Legion Club in New Town, North Dakota, but he could not recall the names and locations of the places where he continued to drink later that evening. <u>See</u> Tr. 55-59. Billie was unable to remember much of what occurred on the evening of December 14, 2004, and without providing more information as to the individuals with whom he was drinking and the locations where he consumed alcohol, defense counsel is presented with considerable difficulty in locating and interviewing witnesses.

The Court finds that Billie has failed to show that defense counsel was deficient in failing to present other fact witnesses at the suppression hearing to corroborate Billie's claim of intoxication. Further, Billie has failed to provide the Court with any information as to the anticipated testimony of such potential witnesses. Even if there were witnesses who could establish

that Billie was intoxicated on December 14, 2004, (the night before the FBI interview), those persons were not present at Billie's residence the next morning to attest to his condition at the time of the interviews.  Billie has failed to establish that the lack of additional fact witnesses presented at the suppression hearing prejudiced his defense even if counsel were deficient.  Accordingly, Billie is not entitled to habeas relief on this claim.


   B.   **TRIAL**

   Dr. Alonna Norberg, a board-certified pediatrician, testified as to a medical evaluation that she conducted on C.H. on November 18, 2004, in Fargo, North Dakota, to determine whether there was evidence of sexual assault.  See Tr. 138.  As part of the medical evaluation, Dr. Norberg obtained a medical history of C.H.  She described C.H.'s medical history as follows:

   [Government]:  And what did [C.H.] explain?

   [Dr. Norberg]:  He went through over a period of time and explained repeated anal penetration as well as oral penetration by the alleged offender that he described over a number of years through – grades three through six.  He described that this was very painful, that on many occasions caused bleeding to the point where he would leak stool and blood onto his underpants to the point where he'd have to wear dark boxers so that his friends wouldn't see the blood and the stool that would be leaked onto his underpants.
      He also described ejaculate both of the alleged perpetrator in his mouth as well as his – in his anus around his buttocks and down his legs.

   [Government]:  Did he indicate how long – or when the last episode had occurred?

   [Dr. Norberg]:  When I saw him it was early November.  And I always like to know for medical diagnosis purposes before I do my exam when the last possible sexual contact could have occurred.  He described it as being Thanksgiving the year prior.  And so that's what he explained to me, but that it had started I believe when he was seven or eight so in the third grade.
      When I asked him how often this would happen he explained that it was too many to count; that at least it was over 50 he believed; that sometimes it would

happen quite frequently but then he [Shondo Billie] would give him a break and leave him alone for a while and then it would happen frequently again.

. . .

[Government]:  Did [C.H.] describe any ways that he tried to cope with what was happening to him?

[Dr. Norberg]:  He said the first time it happened when it was in a bathroom he screamed and he kept screaming until – and he said he wouldn't shut up and so that during the first interaction with Shondo Billie that he stopped because he wouldn't quit screaming.

. . .

[Government]:  Did he provide you with any other details with the events themselves?

[Dr. Norberg]:  He actually was quite descriptive for it happening over a number of years . . . . He really described a house with two broken windows and green shutters. He described another white house.  He described a basement, it happening on a couch and a bed, described there being a feeling like there was ghosts in the basement when this was happening.

See Tr. 142-146.

After obtaining a medical history on C.H., Dr. Norberg performed a head-to-toe physical examination of C.H. and found that he had significant excoriation of the anus.  See Tr. 148.  Dr. Norberg noted that the excoriation continued up his back in between the buttocks which was consistent with the medical history provided by C.H.  See Tr. 149.  During the rectal exam, Dr. Norberg observed blood in C.H.'s stool and noted that the stool in the rectum was soft, but Dr. Norberg did not observe chronic scarring or breaks in the skin.  See Tr. 149.  Dr. Norberg found the findings to be consistent with the medical history provided by C.H. based upon the time that had elapsed since the last reported episode of anal penetration and the healing nature of the rectum.  See Tr. 149-150.

11

Dr. Norberg referred C.H. to Dr. Blausfuss, a pediatric gastroenterologist.  See Tr. 150.  Dr. Norberg testified that Dr. Blausfuss performed an anoscopy on C.H. and determined the cause of the bleeding to be a break in the tissue on the inside of the rectum.  See Tr. 151-152. Dr. Blausfuss recommended no further penetration into the rectum for six months.  See Tr. 152.

Billie argues that defense counsel was ineffective for failing to object to the testimony pertaining to Dr. Blausfuss's opinions.  Billie contends that the testimony is inadmissible hearsay which "had the effect of bolstering the findings of Dr. Norberg who really could not say with precision that the victim had physical symptoms of child abuse."  See Docket No. 77.  Billie contends that the net effect of the testimony was to allow two experts to testify with only Dr. Norberg subject to cross-examination.  Billie further contends that the testimony was a critical element of the Government's case and, therefore, its admission prejudiced his defense.

Billie misconstrues the effect that the testimony pertaining to Dr. Blausfuss had on the jury. Even if defense counsel was deficient in failing to object to this testimony, Dr. Norberg provided detailed testimony of C.H.'s medical history which clearly implicated Billie separate and apart from Dr. Blausfuss's opinions.  Moreover, the jury heard from C.H., who testified that Billie anally penetrated him more than twenty times, with the last incident occurring in November 2003.  See Tr. 117-121.  The jury also heard testimony from FBI Agent Ball that Billie, after signing a Miranda waiver, admitted to repeated incidents of anal and oral intercourse with C.H.  See Tr. 176-178.  FBI Agent Trone also provided testimony that Billie admitted to engaging in oral and anal intercourse with C.H.  See Tr. 255-256.

After reviewing the entire record, the Court finds that Dr. Norberg's testimony pertaining to Dr. Blausfuss, if it can be interpreted to implicate Billie, was so insignificant that the admission

was harmless beyond reasonable doubt.  Billie has failed to establish that the admission of testimony pertaining to Dr. Blausfuss prejudiced his defense.  Accordingly, Billie is not entitled to habeas relief on this claim.

### C.      POST-TRIAL

#### 1.      SENTENCING

Billie contends that defense counsel was ineffective for failing to spend sufficient time reviewing the Presentence Investigation Report (PSR) with him.  Billie has not explained how counsel was deficient in reviewing the PSR.  Billie has not alleged that the PSR contained inaccurate information or was incomplete.  Nor has Billie alleged that he did not understand the contents of the PSR.  Billie has not asserted that the PSR contained information to which defense counsel should have objected.  Further, Billie offers no specifics as to how the sentence imposed would have been affected if defense counsel had spent additional time with him reviewing the PSR.  In summary, Billie has failed to show that defense counsel was deficient in his review of the PSR and that any such deficiency prejudiced the sentencing proceedings.  Billie is not entitled to habeas relief on this claim.

Billie also argues that defense counsel failed to present meaningful mitigating evidence at the sentencing hearing.  Billie specifically alleges that counsel failed to present testimony from family and friends as to his positive qualities.  However, it is undisputed that defense counsel presented mitigating evidence at the sentencing hearing.  Counsel presented testimony from JoAnne Gayle Baker, Billie's mother.  Baker testified that she was "a hundred percent sure" that Billie did not commit the acts for which he was convicted.  See Tr. 8.  She further testified, "The victim's

mother has an issue with me and my brother, and unfortunately my son's having to pay for it.  I am not doubting [C.H.] was abused, I'm just saying it wasn't my son that did it.  There were witnesses the FBI couldn't find at the time of the hearing, and that, for some reason, was let go."  <u>See</u> Tr. 8.  Defense counsel also submitted three letters of support from family and friends of Billie.  <u>See</u> Tr. 19.

Even if defense counsel was deficient in failing to present other mitigating witnesses at the sentencing hearing, Billie failed to show that he was prejudiced as a result.  To establish prejudice, Billie "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>See</u> <u>Strickland</u>, 466 U.S. at 694.  Because <u>Strickland</u> requires that the reasonableness of defense counsel's conduct be evaluated at the time counsel exercised his conduct, the Court must determine whether counsel's failure to present additional witnesses prejudicially affected the sentencing proceedings.  Billie contends that family and friends would have provided testimony as to his positive attributes.  There is no evidence that Billie ever provided the names of family and friends to his attorney.  Further, Billie has not stated what these witnesses would have testified to, and the Court will not speculate as to the testimony of potential fact witnesses at a sentencing hearing.  Billie has failed to show that he was prejudiced by defense counsel's failure to present additional witnesses at the sentencing hearing.  Accordingly, Billie is not entitled to habeas relief on this claim.

## 2.   **APPEAL**

Billie contends that defense counsel was ineffective for failing to consult with him about the appeal and the filing of a brief pursuant to <u>Anders</u>.  Defense counsel filed an <u>Anders</u> brief in which

he argued that the case lacked any meritorious issues for appeal, and requested permission from the Eighth Circuit Court of Appeals to withdraw as counsel. The Eighth Circuit ultimately dismissed the case and found that the issue on appeal was frivolous and granted the motion to withdraw.

Billie argues that defense counsel failed to raise on appeal the admissibility of Billie's statements and the admissibility of the hearsay testimony of Dr. Norberg. Billie contends that "[h]ad the appellate court been given an opportunity to address these issues and had there been a reversal on one or both, [he] would have been entitled to a new trial at the very least." See Docket No. 77.

Even if defense counsel was deficient in failing to raise other issues on appeal, Billie has not shown that he was prejudiced. To demonstrate prejudice, Billie must show that, but for defense counsel's error in failing to raise the admissibility of Billie's statements on appeal, there is a reasonable probability that the result of the appellate proceedings would have been different. See Strickland, 466 U.S. at 694. Billie has failed to present any evidence to establish that there is a reasonable probability that the Eighth Circuit Court of Appeals would have reversed this Court's pretrial ruling on the admissibility of Billie's statements. Billie has failed to establish prejudice and is not entitled to habeas relief on this claim.

### D. **REQUEST FOR HEARING**

Finally, Billie has moved the Court to grant an evidentiary hearing. 28 U.S.C. § 2255 provides, "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Court has determined that Billie

is not entitled to habeas relief on any of the claims asserted in the petition.  The record conclusively demonstrates that Billie is not entitled to any relief.  As a result, the request for an evidentiary hearing is denied.

**IV.**     <u>**CONCLUSION**</u>

Based on the foregoing reasons, Defendant's petition for habeas corpus relief (Docket No. 76) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 17th day of September, 2008.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

16